BOARD OF SUPERVISORS OF WOOD COUNTY *v.* LACKAWANA
IRON AND COAL COMPANY.

The acts of March 8, 1867, c. 93, of March 3, 1869, c. 166, and of Feb. 17, 1871, of Wisconsin, under which certain bonds were issued to the Green Bay and Lake Pepin Railroad Company, were not repealed, either directly or by implication, by the acts of the legislature of that State of March 8, 1870, c. 210, and of March 11, 1872, c. 34.

ERROR to the Circuit Court of the United States for the Western District of Wisconsin.

Submitted on printed arguments by *Mr. P. L. Spooner* and *Mr. S. L. Dixon* for the plaintiffs in error, and by *Mr. S. U. Pinney* for the defendant in error.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an action at law brought by the defendant in error to

recover the amount due upon certain coupons taken from bonds issued by the plaintiff in error to the Green Bay and Lake Pepin Railroad Company, of which coupons the plaintiff in error was the owner and holder. The coupons were payable to the treasurer of the company or order, and it was not questioned that the plaintiff became their holder *bona fide*. The bonds and coupons were issued under the authority conferred by the acts of the legislature of the State of March 8, 1867, c. 93, of March 3, 1869, c. 166, and of Feb. 17, 1871, c. 76 (Private and Local Laws of Wisconsin). The two last were amendatory of the first-named act. Every thing touching the issue of the bonds was in conformity to the requirements of these statutes, and, so far as this point is concerned, the validity of the bonds is not denied. Further remarks upon the subject are, therefore, unnecessary. But it is insisted, that before the bonds were issued, and before the contract for their issue was entered into, the acts under which they were issued were repealed by the act of March 8, 1870, c. 210, and the act of March 11, 1872, c. 34. These references are also to the local and private laws of the State. The latter of these acts was amendatory of the former.

There was certainly no express repeal. This is not alleged. The proposition is, that there was such repeal by implication.

This renders it necessary to examine the subject.

The Green Bay and Lake Pepin Railroad Company was incorporated with authority to construct a railway from Green Bay, in Wisconsin, to the Mississippi River. There was no designation of the counties through which it should pass. Prior to the passage of the act of March 11, 1872, c. 34, no work had been done on the line of the road west of New London, a town between the termini of the road. From New London to Grand Rapids, by the line of the road, was about forty-five or fifty miles; and it was forty miles from the latter place to the nearest point on the Milwaukee and St. Paul Railroad. On the 9th of February, 1871, the company submitted its first proposition for the exchange of the stock of the company for the bonds of the county. Grand Rapids and Centralia are in Wood County, opposite to each other, upon the Wisconsin River. The company asked for $200,000 of bonds, — $100,000 to be delivered when the railway was " graded, tied, and ironed," from Fort

Howard to Grand Rapids ; $50,000 when the work was so done from Fort Howard, and a bridge built over the Wisconsin River from Grand Rapids, to Centralia; and the remaining $50,000 when the roadway was so " graded, tied, and ironed as far west as Yellow River." If the road were not so built to Grand Rapi·s by the 1st of January, 1872, the first instalment of the bonds was to be forfeited; and, if not so built to Centralia and Yellow River by the 1st of January, 1873, the residue of the bonds was to be forfeited in like manner.

The proposition was submitted to a popular vote, and duly sanctioned thereby pursuant to law. The company finding itself unable to comply with the first condition in point of time, on the 16th of December, 1871, submitted a further proposition, to the effect that the county should exchange $50,000 of the bonds for stock of the company to the like amount upon the road being so built to Grand Rapids, the claim of the company to these bonds to be forfeited unless the work was done by the 1st of January, 1873. This proposition was also duly sanctioned by the requisite popular vote. This was a modification of the pre-existing contract, by the elongation of the time for the fulfilment of the first condition, and the reduction of the amount of the bonds the company was to receive. As thus modified, the original contract was fulfilled by both parties. The work was done and the bonds were delivered. The amount was $150,000. The coupons upon which this suit was brought were taken from a part of these bonds. Before any thing was done touching the issue of the bonds, the legislature of Wisconsin incorporated " The Wisconsin Valley Railway Company," with authority to construct a railroad " from such point on or near the La Crosse and Milwaukee Railroad, between Kilborne City and the tunnel on said road, as its directors should select, to Wausau, via Grand Rapids." The line of this road approached Grand Rapids from the west, and the Green Bay and Lake Pepin road from the east. Nothing had been done with respect to the locating or building of either road through Wood County prior to the passage of the act of 1870, and the act amending it, by which it is alleged the repeal was wrought. The act of 1867, under which the bonds were issued, declares that " it shall be lawful for every county, through any portion of which the

Green Bay and Lake Pepin Railway shall run, or any town or incorporated village in such county, to issue and deliver to said company its bonds, payable," &c., "as may be agreed upon by and between" the company and the designated authorities of the county. The act is entitled "An Act to authorize the counties and towns through which the Green Bay and Lake Pepin Railroad passes, to aid in its construction." The amendatory acts of 1869 and 1871, except the third section of the latter act, are confined to details with respect to the proceedings of the county. That section will be presently considered in another connection.

The act of March 8, 1870, relied upon by the plaintiff in error, is entitled "An Act to authorize the county of Wood to aid in the construction of railroads." The amendatory act of 1872 only restricts and lessens the amount of the aid authorized to be given by the original act, and abridges the time of the notice for the popular vote. This latter act may, therefore, be laid out of view. The prior act, in the first section, declares that bonds may be issued "for the purpose of aiding in the construction of the Wisconsin Valley Railroad, from any point on the line of the Milwaukee and St. Paul Railway to the city of Grand Rapids or the village of Centralia in the county of Wood, or in the construction of any other railway of greater length which may first be built from any other direction to the said city of Grand Rapids or the village of Centralia." The second section authorizes the county to contract for aid to "any railroad company that shall undertake the construction of a railroad from any point on the line of the Milwaukee and St. Paul Railway to the said city of Grand Rapids or village of Centralia, or with any other railroad company that shall propose to construct from another direction a railroad of greater length into the said city or village," &c. The act of 1867 is confined to the Green Bay and Lake Pepin company, and the aid specified was to be given upon its running through "any portion" of Wood County, whether it did or did not go to Grand Rapids or Centralia. The act of 1870, on the other hand, applies to all such companies as should construct roads to one or the other of those places.

Looking at the face of the statutes, there is certainly no

repugnancy between them.   Their scope and purposes are distinct and different, and they may well stand together.   The fact that the Green Bay and Lake Pepin company chose to take their road to 'Grand Rapids and Centralia does not affect the question.   They could not by an act *in pais* give a repealing effect to the statute of 1870, which it would not have had if the act *in pais* had not been done.

The parties concerned in the issue of the bonds seem to have had no idea that there had been any such repeal as is contended for.   This must have been the view of the railroad company when it submitted its two propositions of Feb. 9, 1871, and Dec. 16, 1871, when it built the road, and when it received the bonds; of the voters of the county, when they gave their sanction to those propositions, and authorized the bonds to be issued; and of the county authorities, when they called for the vote, announced the result, and issued and delivered the bonds to the company accordingly.   The legislature must have had the same understanding.   The act of Feb. 17, 1871, names the act of 1867 by its title, and amends it.   Why amend, if it had been repealed by the prior act in question of 1870?   Again: the third section of this amendatory act declares that the act published March 8, 1870 (c. 24, Gen. Laws), entitled " An Act to encourage the construction of railroads in this State," " shall not be construed as repealing or otherwise affecting the act to which this act is amendatory," &c.   Why this careful provision against the repeal of the act amended, if the act of 1870 had already repealed it?   Again: the act of March 17, 1873, amending the act entitled " An Act to incorporate the Green Bay and Lake Pepin Railway," enacts that " the counties of Brown and Wood, each of which has issued $150,000 of bonds in aid of the construction of the Green Bay and Lake Pepin Railway," and all other towns and villages which had issued bonds for the same purpose, " shall, so long as they respectively continue to hold and own the stock of said railway company issued or to be issued in exchange for such bonds, in addition to the right to vote for all other directors of said company, have the exclusive right of and among themselves, by the vote of a majority of the shares owned by them collectively, to elect one of the directors of said company, who shall be styled *the municipal director*,"

&c. If the act of 1867 had been repealed, as is claimed, the bonds were, as is now maintained, utterly void, and the holders of the stock had no title, and consequently could have no right to vote upon it. But, on the contrary, the existence and validity of the act when the bonds and stock were issued, and the validity of the title of the rightful holders of both, are affirmed by the clearest implication. None could be stronger; and what is so implied in a statute, contract, will, pleading, or other instrument of writing, is as effectual as what is expressed. *United States* v. *Babbit*, 1 Black, 61. Repeal by implication is not favored in the law. It is held to occur only where different statutes cover the same ground, and there is a clear and irreconcilable conflict between the earlier and the later. The rule, as thus stated, is so well settled, that discussion and the citation of authorities are unnecessary.

The statute-book of 1870 shows the spirit by which the legislature was then animated, with respect to the policy of permitting aid to be given to railroad companies by means of municipal bonds. It was in favor of the largest latitude. Chapter 24, before mentioned, is a striking instance of such legislation. It permitted "any town, incorporated city, or village, into, near to, or through" which the line of any railroad should be located, to take the stock of the company to such amount as should be authorized by a majority of the voters, — there was no other check or limit prescribed, — and to pay for it with a like amount of town, city, or village bonds, authorized by the vote of such majority to be issued for that purpose. It was not a time when there was a disposition to repeal any act of the character of the act of 1867. The current was altogether in the other direction. The reaction set in at a later period. The act of 1867 was in no wise affected by the act of 1870. There was, therefore, no repeal of the latter by implication or otherwise. It is suggested further, in behalf of the plaintiff in error, that the amount found by the verdict of the jury, and for which the judgment was rendered, includes interest on the coupons, which, it is alleged, is contrary to a statute of the State in force when the bonds were issued. It is sufficient to say upon this subject, that the objection, not having been made in the court below, cannot be taken here. To hold otherwise would involve

the exercise on our part of original instead of appellate juris-
diction.   This is not permitted to us.

The instructions given to the jury by the learned judge who
tried the case in the Circuit Court were correct.

*Judgment affirmed.*

. Mr. Justice Davis, being interested in the question, as one
of the executors of a will, took no part in the decision of this
case.