## HARDING v. GIDDINGS et al.

### (Circuit Court of Appeals, Seventh Circuit. April 11, 1896.)

### No. 249.

1. EQUITY PLEADING—FACTS IN ISSUE.

One G. having applied to H. to advance money required by him to take up a note, it was agreed that he should give H., as security, a mortgage held by him on land previously sold by him to his son, and should give to H. a deed of such land; H. giving back a bond to reconvey his right, title, and interest on repayment of his advances. This agreement was carried out; H. advancing the money and executing the bond to reconvey, and receiving the deed from G., who afterwards assigned the bond to his daughter C. G. H.'s executor afterwards undertook to foreclose the mortgage, which was resisted by C. G., who showed that she had paid or tendered to H., or his executor, all the sums advanced, and claimed to be entitled to the mortgage. A complicated litigation in the United States district court ensued, with numerous pleadings on the part of the various parties. On the hearing an agreement was offered in evidence, purporting to provide for an absolute conveyance of the mortgaged property to H. by G., after G. should have bought it in at a sale by an assignee in bankruptcy, and for the discharge, as part of the consideration, of the debt originally secured by the assignment of the mortgage to H. This was objected to as not within the issues, and no evidence was given to show that it had ever been acted upon; but, on the contrary, it appeared that, after the time for its performance, H. and his executor had treated the debt secured by the assignment as a subsisting one, and the bond to reconvey as an existing obligation. The court reserved the question of the admissibility of the agreement, and ultimately gave judgment for C. G., which was affirmed by the circuit court. Upon an appeal to the circuit court of appeals, the record failed to show what decision had been reached by the court as to the admissibility of the agreement for an absolute conveyance to H., but the pleadings failed to disclose any allusion to it. *Held* that, as well because it was not within the issues as because the facts showed that it had never been acted on, or treated by the parties as existing, this agreement could not avail to bring about a reversal of the judgment.

2. TENDER.

Where the obligations created by a contract, to pay money and to reconvey land upon such payment, are mutual and reciprocal, and not independent, a tender of the money, accompanied by a request to convey the land, is sufficient.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This case is the remnant of a litigation in chancery begun in the United States district court for the Northern district of Illinois, before Judge Blodgett, 22 years ago; the jurisdiction attaching to that court on account of the pendency therein of proceedings in bankruptcy against Harvey W. Giddings, the grantor in the trust deed which the chancery suit was brought to foreclose. The first bill was filed at the December term, 1873, to foreclose a trust deed executed by Harvey W. Giddings to Warren M. Baker for $11,000, dated February 21, 1871. The notes secured by the trust deed were assigned to Abner C. Harding April 10, 1872. No questions, however, in respect to the proceedings upon that bill are involved in this appeal. The questions here in controversy pertain rather to the ownership of three certain notes aggregating $18,300, one for $6,000, being dated January 6, 1868, and two for $6,150 each, dated January 1, 1868, and the mortgage securing the same being dated January 9, 1868, and executed by Harvey W. Giddings to John W. Giddings, conditioned for the payment of said sum of $18,300; and also respecting the amount due upon a note for $4,000, due June 10, 1872, executed by John W. Giddings, Silas Giddings, A. N. Wiswell, and Harvey W. Gid-

dings; and also what amount, if anything, is secured to be paid on these notes under and in pursuance of two certain agreements alleged to be made between A. C. Harding and John W. Giddings, one dated December 13, 1873, and the other February 10, 1874. These notes secured by mortgage are alleged to have been made by Harvey W. Giddings to his father, John W. Giddings, to secure a part of the purchase money on the land described in the mortgage. Various answers and cross bills, supplemental and amended bills, were filed, which were referred to a master for hearing. Some time in 1873 it appears that Harvey W. Giddings became indebted to the First National Bank of Galesburg in the sum of $5,000, and John W. Giddings became his surety for the debt. The bank wanted its money, and Harvey W. Giddings could not pay; and John W. deposited with that bank the secured notes for $18,300, with the mortgage securing the same, as collateral security for the $5,000 due to the bank. In December, 1873, John W. Giddings applied to Abner C. Harding for a loan to take up the debt of Harvey at said bank, which amounted, with interest, to $5,131.94. The Monmouth National Bank at that time held the note above mentioned for $4,000, signed by Harvey W. Giddings as principal, and John W. Giddings, Silas Giddings, and A. N. Wiswell as sureties; and Gen. Harding told John W. Giddings that he would furnish the money to take up the Galesburg debt, if Giddings would pay or secure to the Monmouth Bank a portion of this $4,000 note, to wit, $868.06 on this note, which was then held by the latter bank, of which Gen. Harding was president. The question was raised how John W. Giddings could repay Gen. Harding, and this mortgage of $18,300, which was deposited with the First National Bank of Galesburg as collateral security, was the security which Mr. Giddings had to offer to Gen. Harding. It was agreed that Mr. Giddings should make a deed to Gen. Harding of the homestead farm, and that Gen. Harding should give back an agreement to reconvey the farm upon the payment of $6,000 in four equal installments, with interest at 10 per cent. per annum. Mr. Snyder, the son-in-law of Gen. Harding, paid the $5,131.94 to the bank, and took up the note of $5,000, and the collateral, which was $18,300 of notes, and first mortgage on the homestead, 166 acres. And thereupon John W. Giddings and his wife made a warranty deed conveying to Gen. Harding the 166 acres, which deed bears date the 13th day of December, 1873; and on the same day Gen. Harding entered into a bond to convey the same premises to John W. Giddings, or his assigns, upon the payment of $6,000 in four equal annual payments, with interest at 10 per cent. payable annually on January 1st of each year. Upon the payment of this money, he bound himself to execute and deliver to John W. Giddings, his heirs or assigns, a deed of conveyance of all right, title, and interest of the said Harding of, in, and to the same premises. At the time of this transaction, Snyder drew a receipt, and executed the same in the name of A. C. Harding, by his direction and in his presence, for $868.06,—being the difference between the amount paid on the Galesburg note and the $6,000 named in the bond, which amount ($868.06) was, by the terms of the receipt, to be credited on the $4,000 note held by the Monmouth Bank,—and delivered the receipt to John W. Giddings. The bond for $6,000 was on April 5, 1875, assigned by John W. Giddings to the appellee Caroline Giddings. When George F. Harding, as executor of Abner C. Harding, on May 3, 1876, filed his supplemental bill to foreclose the mortgage of $18,300, John W. and Caroline Giddings answered, setting up the $6,000 bond for a deed, and objected to the foreclosure. Afterwards Caroline Giddings filed a separate amended answer, in which she claimed to be the owner of the bond under the assignment from John W. Giddings, and denied the right to foreclose the mortgage. Afterwards, on January 18, 1878, she filed a cross bill against George F. Harding, setting up the history of the $18,300 notes and mortgage, and the deposit as collateral security, and the making of the bond, and alleging that she had paid all of the money due on the bond, excepting $1,650, and that she had tendered this amount, and asked the court to decree that the executor deliver up to her the $18,300 notes and mortgage, and also make a deed to her in accordance with the provisions of the bond. The payments on the $6,000 bond are shown by the testimony of Almon Kidder, who was the attorney and agent of George F. Harding, as follows: January 1, 1875, $2,100 from Caroline Giddings.

December 31, 1875, $1,950 by Caroline Giddings. January 1, 1887, $1,800 by Caroline Giddings, being the amount due at the date of the last payment. George F. Harding received it all. On January 1, 1878, Caroline Giddings and A. M. Brown tendered to Kidder the sum of $1,650, being the balance due upon the bond, and demanded a deed in accordance with the terms of the bond, and on the next day deposited this sum in the First National Bank of Galesburg as an abiding tender, where it has remained until the present time. The case, of which these things are but part and parcel, became quite a complicated one, and came on for hearing in the district court, before Judge Blodgett, on July 21, 1881. On the hearing there was offered in evidence by Harding an agreement as follows:

"This agreement, made this 10th day of February, A. D. 1874, between John W. Giddings and Hannah Giddings, his wife, of the one part, and Abner C. Harding, of the other part, witnesses, that said John W. Giddings does hereby agree to bid off and purchase at the assignee's sale, on the 21st inst., all the interest of the estate of Harvey W. Giddings, bankrupt, in the S. E. ¼ of Sec. 17, in Floyd township, in Warren county, Ills., and 6½ acres off the N. side of the N. E. ¼ Sec. 20, in same township, known as the 'Giddings Homestead Farm,' subject to all liens and incumbrances thereon; one of the incumbrances thereon being a mortgage from said H. W. Giddings to John W. Giddings, for $18,300, being the purchase money of said premises, which mortgage has been assigned by said J. W. Giddings to said A. C. Harding, heretofore, as security for money advanced, but which said mortgage, and all interest therein, and in all the money thereby secured, is hereby absolutely sold and assigned to said Harding; and upon the purchase of said title at said assignee's sale, as hereinbefore agreed, the said John W. Giddings and Hannah Giddings, his wife, do hereby agree and bind themselves to convey all of said premises to said Harding upon the payment and for the consideration of fifty dollars per acre for said premises, which said consideration money shall be made up as follows: First, the six thousand dollars and interest thereon specified and mentioned in the contract of purchase between said Harding and said J. W. Giddings, dated the 13 day of December, 1873; second, the amount now unpaid upon the note of H. W. & J. W. Giddings to Henry Cable, less two hundred dollars; and the residue of said consideration shall be paid in cash as soon as this agreement is consummated and performed upon the part of John W. Giddings. It is hereby agreed that in case the said land shall be bid up beyond what is advisable, in the opinion of John W. Giddings, to bid, and the same shall be bid off by some one else at said assignee's sale, then the said mortgage now in said Harding's hands shall be foreclosed, for the purpose of making a title to said land, to be by said Giddings deeded to said Harding. The title so to be conveyed by said Giddings to said Harding to be clear of incumbrances. Harding to have the pro rata from the Galesburg & Monmouth Bank debts against said Harvey W. Giddings' estate, and the said $18,300 mortgage, and shall pay the taxes on said land. If said Giddings shall not be present at said assignee's sale, then said Harding shall bid off the said land at said sale on behalf of said Giddings. Witness the hands of the parties hereto, February 10, 1874.

"[Signed]            J. W. Giddings.
"Hannah Giddings.
"A. C. Harding."

This agreement is dated about four months before Gen. A. C. Harding died, and while he was upon his deathbed. Its exact history and purpose, and whether or not it ever went into effect, do not clearly appear in the litigation. It was executed at Gen. Harding's residence, and remained among his papers until November of that year (1874), when it was sent to Almon Kidder, the agent of George F. Harding, at Monmouth, but did not come to his notice until February, 1876, when he sent it to George F. Harding.

The decree of the district court, so far as it relates to the issues in this case, was in favor of the appellee Caroline Giddings, upon the cross bill, and was as follows: "The court further decrees and declares that the notes and mortgage of January 1, 1868, made by Harvey W. Giddings to John W. Giddings, described in the cross bill of Caroline Giddings, were only held by the decedent

of said complainant as collateral to the amount for which said notes and mortgage were originally pledged to the First National Bank of Galesburg, and that said bond of December 13, 1873, and the deed of said John W. Giddings to Abner C. Harding, of the same date, were merely evidences that the repayment of said sum of six thousand dollars ($6,000) described in said bond was secured upon the said interest of said John W. Giddings as mortgagee of said lands therein described. The court further finds that on April 5, 1875. said John W. Giddings assigned and transferred his interest in said contract with said Abner C. Harding to said Caroline Giddings; that the tender of the sum of sixteen hundred and fifty dollars ($1,650) made by Caroline Giddings, January 1, 1878, to Almon Kidder, as agent of George F. Harding, was a good and sufficient tender of the balance due according to the terms of said bond. And it is therefore ordered that said George F. Harding, executor as aforesaid, shall make the conveyance of the said lands described in said bond, according to its tenor, to said Caroline Giddings, assignee thereof, within thirty days, or that Henry W. Bishop, master in chancery of this court, shall make said conveyance." "The court further orders that the said George F. Harding is also directed and decreed to transfer, assign, and deliver to said Caroline Giddings, assignee of said notes and mortgage of January 1, 1868, made by Harvey W. Giddings to John W. Giddings, and the note for five thousand dollars given by J. W. Giddings to the Bank of Galesburg, and held by said Harding, as collateral to said land contract; and the said Caroline Giddings is the owner of the said mortgage, and entitled to hold the same in her own individual right, free and clear from all claims thereon by said complainant." An appeal from this decree was afterwards, and on July 22, 1881, taken to the circuit court by this appellant, and came on for hearing before Judge Woods, and the decree of the district court was affirmed at the May term, 1895.

U. P. Smith, for appellant.
Samuel Kerr and Alfred E. Barr, for appellees.

Before JENKINS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge, after stating the case as above, delivered the opinion of the court.

We think that the decree of the district court, affirmed as it was by the circuit court, was right and should be affirmed. Indeed, it would require a tolerably clear case, after such lapse of time, to disturb a decree of the district court which had been affirmed upon a second hearing by the circuit court. Under such circumstances, when the findings of fact by the district court are affirmed upon appeal, this court will not disturb the decree, unless the error is clear. See Lammers v. Nissen, 154 U. S. 650, 14 Sup. Ct. 1189; Dravo v. Fabel, 132 U. S. 487, 10 Sup. Ct. 170. But, upon a careful review of the record and the testimony, we think the decree is right. While there were other questions made on the hearing, the contest in this court has centered upon a matter apparently not appearing anywhere in the pleadings, nor passed upon by the district court; and that matter is the agreement of February 10, 1874, providing for a sale of the homestead by Giddings to Gen. Harding for $8,000, to be paid as follows: A note of Cable, which Harding held, and was unpaid, less $200; the $6,000 covered by the bond of December 13, 1873; and the balance in cash; and also providing that Giddings should bid in the homestead at the assignee's sale, which was to occur on February 21, 1874. This agreement was offered in evi-

dence on the hearing in the district court, and was objected to on the ground that it was not mentioned or set up anywhere in the pleadings. The court apparently reserved the question. It nowhere appears that the court ever decided the question of its admissibility in evidence, and no finding in reference to it, or any mention of it, is made by the court in its finding or decree. It seems quite clear that the objection taken to its admission in evidence was good, as it is not set up or referred to in any of the numerous bills, amended bills, supplemental bills, cross bills, or answers in the case. Why such an agreement, if relied upon by the party,—so inconsistent with other agreements, and especially with the $6,000 bond for a conveyance of the premises to Giddings upon the payment of that sum, and which was afterwards assigned to Caroline Giddings, and also so inconsistent with the course of dealing between the parties, by which Caroline Giddings paid all but $1,650 of the amount secured by the $6,000 agreement, and tendered the balance, and Harding, the executor, received these same payments without objection,—was not set up or referred to in any manner in any of the pleadings, it is difficult to conceive. The pleadings were so numerous that it could hardly be expected the court could determine at a glance upon the propriety and force of the objection made to the introduction of the paper, and it would be natural and proper that it should reserve the question for further examination. But whether, upon such examination, it sustained the objection, or believed from the other evidence, as the circuit court found, that the agreement of February 10, 1874, was never acted upon by the parties, and was therefore not properly in the case, cannot be determined from the record. If the court disposed of the agreement upon either of these grounds, we think it justified in so doing. The agreement was not pleaded, and the record shows no offer to amend the pleadings so as to make it admissible in evidence. The agreement itself is quite inconsistent with the agreement of December 13, 1873, for the reconveyance to Giddings upon the payment of $6,000, and with the subsequent course of dealing in reference to that agreement, and with the payment of money under it by Caroline Giddings, as well as the payment of the Cable note. This Cable note was one made by H. W. Giddings and J. W. Giddings as surety to Henry Cable, and was held and owned by Harding. The agreement of February 10th provided that out of the $8,000 should be deducted a balance due on the Cable note; and, if the agreement was a subsisting one between the parties, the note should have been paid in that way. But, instead of this, Caroline Giddings paid the balance of the Cable note, in cash, either to Gen. Harding or to his representatives. The payment of this note by Caroline Giddings, and the payment by her of the $6,000 bond, are quite inconsistent with the agreement of February 10th, and show that either that agreement never had valid existence, and never went into effect between the parties, or that it was abandoned, either of which suppositions would properly account for failure to assert and rely upon it in the litigation. If that agreement, which clearly contemplated that the $6,000 bond should not be paid

in money, had ever a potential existence, and was ever operative between the parties, the subsequent conduct of the parties, by which this bond, as well as the Cable note, was paid in cash by Caroline Giddings, and the money accepted upon the agreement by the representative of the Harding interest, shows clearly enough that it had been abandoned. The executor of Gen. Harding's estate could not receive this money from time to time from Caroline Giddings upon that bond, and then refuse to comply with the conditions of the agreement upon which the money was confessedly paid. Having received the money upon the contract, he should have made the conveyance according to its terms, and is estopped from claiming that he was not under obligations to do so. It is true that the agreement of February 10th provided that John W. Giddings should bid in the land at the assignee's sale, and he did so bid it in on the first sale, had on February 21, 1874; but that sale was set aside by the court, and a resale ordered, at which resale, on May 4, 1874, Caroline Giddings bid in the property, and the sale was confirmed. Snyder testifies that he thinks J. W. Giddings was present in the clerk's office, adjoining the place, when the second sale was made; that he talked with Harding about the matter of bidding before the sale took place; and that Harding stated it would be proper and right for J. W. Giddings to bid off the property, or that it should be bid off by or for him,—that he did not wish to interfere with the interest of J. W. Giddings in the home farm. This evidence points in the same direction,—to an abandonment of this agreement. Again, Snyder testifies that Harding never purchased the $18,300 notes and mortgage, to his knowledge, or obtained them in any other way than as security for the money advanced to take up the $5,000 note, and such is the uncontradicted testimony of Harding's son-in-law and trusted agent. Under these circumstances, it is difficult to give any effect to the agreement of February 10, 1874. The agreement is not under seal, and does not purport to be made upon any consideration. The external evidence of a consideration is equally wanting, the testimony disclosing none. It is suggested that it may have been to secure future advances of money, but evidence is wanting of any such advances. Snyder, Harding's agent, testified:

"I have no recollection of Gen. Harding advancing any amount in cash; but whether he did, or not, his check book will show."

The check book was not produced in evidence.

John W. Giddings testified in regard to the $18,300 notes as follows:

"Three notes were given by H. W. Giddings ($6,000 each, about $18,300), secured by mortgage on the S. E. ¼ of section 17. In the fall of 1873 I gave them to the First National Bank of Galesburg as collateral for a note given them, for $5,000, by H. W. Giddings and myself, as security. Geo. Snyder, agent for A. C. Harding, paid the $5,000 to the bank, and interest, and the three notes and mortgage were transferred to him as collateral. The three notes for $18,300 are mine. I never sold them to anybody. I let them go as security for the other note, which I had signed as security for H. W. Giddings; and, when that note is paid, I ought to receive the three notes and mortgage back, for they are mine. I never got a cent for them."

That the payment of the debt for the security of which collaterals are assigned releases the collaterals, hardly needs the citation of authorities. Biebinger v. Bank, 99 U. S. 143.

We quite agree with Judge Woods, who heard the case in the circuit court, that the only debatable question of essential merit in the case arises out of the contract of February 10, 1874, and that:

"While this agreement was found among the papers of the deceased, it is clear that it was never acted upon, or treated by either party as binding. John W. Giddings made a purchase of the land of the assignee, it is true, but the said sale was set aside by order of court, and at a subsequent sale the appellee became the purchaser; and from time to time payments were made upon the $6,000 note, until the debt was discharged. This, of course, was inconsistent with the contract of February 10, 1874. The appellant argues that he ought not to be bound by any estoppel, because when he received any payment he was ignorant of the contract. If there is any proof, outside of the briefs, of that ignorance, I have overlooked it. But even if he acted in ignorance, and under a mistake of his rights as executor, it was necessary, once he acquired knowledge of the agreement, if he desired to enforce it, that he should have made prompt return or tender to the appellee of all sums paid to him and to his testator upon the original obligation for $6,000, and should have declared his readiness to perform the contract in other respects. He could not retain the moneys so paid and at the same time insist upon a contract by which his right thereto had been extinguished."

We are further of the opinion that because the agreement was not set up, either by bill or answer, in the pleadings, and was not considered or passed upon by the court of original jurisdiction upon the hearing, this court cannot consider or give effect to it. National Bank v. Com., 9 Wall. 353; Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423; U. S. v. Morgan, 25 U. S. Sup. Ct. Rep. (Lawy. Ed.) 519; Board of Sup'rs of Wood County v. Lackawana Iron & Coal Co., 93 U. S. 619; Lloyd v. Preston, 146 U. S. 630, 13 Sup. Ct. 131.

The only other contention of any substance made on the hearing was that the tender of the balance of $1,650 due on the $6,000 agreement was insufficient, because not an absolute and unconditional tender of the money. But the obligations to pay the money, and reconvey the land upon payment, were mutual and reciprocal, and not independent; and the tender, accompanied by a request to convey, was sufficient, as held by the district court. It was as much the duty of Harding to reconvey upon payment, as it was for Giddings to pay, the two acts being concurrent. The testimony of A. M. Brown, who made the tender, is as follows:

"As the agent of Caroline Giddings, I did make a tender of $1,650 to Almon Kidder, executor, etc., January 1, 1878, at office of Kidder, in Monmouth, Ill. I went to Monmouth in company with Miss Giddings, at the time before stated, to make the last payment on said contract. I presented Kidder the contract, and told him I desired to make the last payment thereon, and counted out to him $1,650. As I presented the money, I told him I desired a deed in accordance with the contract. He said he did not have the deed, and therefore couldn't give it. He offered to receipt for the money in Harding's name, as he had before done. I told him I did not desire to do that, but desired to make him a tender of the money. He counted the money carefully, said the amount was all right, and that the notes were all legal tenders. I then tendered said money, and demanded said deed; and, that being refused, I made a memorandum on the back of the contract, which there appears, bearing date January 1, 1878. Kidder refused to sign the memorandum, but said it expressed the facts. I then told him I would make the $1,650 an

abiding tender, at the First National Bank of Galesburg, and that when Geo. F. Harding, as executor, etc., should present to said bank a deed, conveying to John W. Giddings and his heirs and assigns all the right, title, and interest which the said A. C. Harding possessed or was seised of in December, 1873, in S. E. ¼ 17-10, 1, also 6½ acres off the north side of N. E. 20, 10-1, then the bank would deliver said sum of $1,650. Miss Giddings and myself then returned to Galesburg, and, the bank being closed, we went to the First National Bank the next morning, being January 2, and deposited said $1,650 with said bank, to be delivered to Harding when he complied with the conditions before named. The money has remained there ever since."

The tender was not refused upon any ground, except that the agent did not have the deed ready. He was willing and ready to accept the money and receipt for it, and it has been in the bank for his principal ever since the time of the tender.

There are no other questions that we desire to notice. The decree of the court below is affirmed.