## TERRITORY *v.* HONOLULU RAPID TRANSIT & LAND CO.

### No. 909.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. T. B. STUART, JUDGE.

ARGUED JUNE 19, 20, 21, 1916.          DECIDED JULY 24, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

STATUTES—*construction—noscitur a sociis.*

The rule *noscitur a sociis* does not apply in the construction of a statute where specific words are used which are not relatives of the same genus. There neither word derives color from association with the others, but each stands as the representative of a distinct class.

SAME—*legislative intent—conditions and circumstances existing at time of enactment.*

In ascertaining the meaning of a statute which requires construction the court should consider the language used in connection with the conditions and circumstances existing at the time of its enactment.

SAME—*contemporaneous construction by executive officers.*

A uniform practical construction given to a statute by executive officers of the government who have duties under the act, though not controlling, is, in case of doubt, entitled to much weight, especially where rights of parties have been adjusted in accordance with it.

WORDS AND PHRASES—*"actual cost."*

The term "actual cost" means money actually paid out, or "real cost." It may be considered as synonymous with "expense" and as excluding all profit.

STREET RAILROADS—*Honolulu Rapid Transit & Land Co.—powers under franchise act.*

The Honolulu Rapid Transit & Land Co. has power under sections 17 and 37 of the franchise act (S. L. 1898, Act 69; R. L. 1915, Secs. 784, 804) to expend so much of its income as it may desire in making extensions in and to its line of road; and to

increase its capital stock to an amount equal to the actual cost of its property, including income expended therein (except such as might otherwise b'e payable to the Territory as its share of excess income over 8% in any one year) and money borrowed upon bond issues, plus 25% in addition to such cost.

### OPINION OF THE COURT BY ROBERTSON, C.J.

The Territory, in a suit for an injunction to restrain the Honolulu Rapid Transit & Land Company from carrying out an alleged plan to increase its capital stock, averred that it is provided by the charter and franchise of the company that it shall not be lawful to increase the capital stock of the company in excess of the sum of $200,000 unless the proposed increase shall, when taken with the original capital stock ($200,000) represent only the actual cost of the property of the railway (company) and not over 25% of such cost in addition thereto; that the amount of its capital stock now outstanding is of the par value of $1,207,500, and that it exceeds the actual cost of the property of the railway and 25% of such cost in addition thereto. By an amendment to the bill, however, it was averred that neither the actual cost nor the actual value of the property exceeds the sum of $966,000. The sum of $966,000 plus 25% amounts to $1,207,500, the present outstanding capital of the company. The bill further averred that the company plans and intends to and will, unless restrained, further increase its capital stock to the sum of $1,600,000, which would far exceed the actual cost of its property and 25% of said cost in addition thereto. The company, in its answer, denied that the amount of its present capital stock exceeds the actual cost of its property and 25% in addition thereto, and averred that the actual cost of its property exceeds the sum of $2,171,841.51. It was also averred in the answer that though neither the directors nor the stockholders of the company have taken any action looking to

the increase of the capital stock, the company has a just and legal right to increase the same to the sum of $1,600,-000, and that it may do so at any time unless restrained by order of court. Aside from the point whether the company planned and intended, unless restrained, to increase its stock to $1,600,000 or merely claimed the right to do so at any time, the only issue raised by the pleadings was as to the amount of the capital stock which the company is authorized to issue based upon actual cost of its property. At the hearing, however, the complainant conceded that of the items aggregating the sum of $2,171,976.11, which the company submitted as capital expenditures representing the original cost of the property, items to the amount of $1,603,056.68 were correctly stated. Nevertheless a great mass of testimony was offered and admitted as to the actual present value of the company's property. The complainant advanced the contention that the company could issue stock only upon the value of its plant after deducting depreciation. In other words, that the alleged proposed increase of stock could not legally be made unless it represented actual existing value. The circuit judge, in his decision, after referring to some of the testimony as to the value of the property, and the stipulation of the complainant as to its actual cost, but without making any express findings as to the actual value or the exact cost of the property, held that the right of the company to increase its capital stock turned upon the actual cost and not upon its present value; that by its franchise and charter the company is authorized to issue stock to the actual cost of its property and 25% in addition thereto; and that under any view that may be taken of the evidence (as to either cost or value) the company has the right to issue stock to the amount of $1,600,000. A decree dismissing the bill was entered, and from that decree the Territory has appealed.

We have found some difficulty in ascertaining which, if

any, of the several questions discussed in the appellant's brief are properly before this court for consideration and determination. The following are the errors specified in the brief of the attorney general as having been committed by the circuit judge: (1) "In holding that the respondent may lawfully increase its capital stock to the actual cost of the property of the railway and twenty-five per cent. of such cost in addition thereto." The complainant's bill avers, however, as above stated, that the company's charter and franchise provides that it shall not be lawful for the company to increase its capital stock in excess of $200,000 unless the proposed increase, when taken with that sum, shall represent only the actual cost of the property and not over 25% of such cost in addition thereto. And the bill was evidently drawn upon the theory and understanding that the company has the right to increase its stock to a sum which will equal the actual cost of its property plus 25% thereof. Furthermore, any question as to the additional 25% over and above actual cost would seem to be of no practicality since the complainant has admitted that the "original cost," which we take to mean "actual cost," of the property was $1,603,056.68, the only right claimed by the company being to increase its capital to the sum of $1,600,000. (2 and 3) "In holding that paid up capital stock may be issued *pro rata* to stockholders without consideration of the amount of the cost of the property of the railway paid for by the proceeds from the sale of bonds" or "paid for by surplus earnings and to the full extent of such earnings." A careful reading of the decision of the circuit judge fails to show that he so held. (4 and 5) "In holding that the actual cash value of the property of the railway at the time the above entitled cause was commenced against which capital stock might be issued was $2,139,710" and that "the cost of the property of the railway against which capital stock might be issued was $2,171,976.11."

The circuit judge made no such findings. As above, stated, he made no specific finding as to either the actual value of the property or its exact cost, but only a general finding that upon the basis of either value or cost as shown by the evidence an increase of the capital stock to $1,600,000 would be authorized. The remaining specifications of error (6 and 7) are general ones as to refusing to grant the injunction and in dismissing the bill. Were this a writ of error the last two specifications would be too general as assignments of error to require consideration. But as this is a general appeal intended to bring the case up for review upon the whole record (R. L. 1915, Sec. 2509) we feel disposed to consider some of the questions which have been argued notwithstanding the failure of the appellant's brief to specify them as errors under Rule 3 of this court. The material facts are not disputed, the questions raised being questions of law. The views of counsel for the complainant seem to have developed considerably since the bill was filed.

The Honolulu Rapid Transit & Land Company was incorporated under a charter which authorized it to construct a street railway in such streets, roads and places in Honolulu as are designated in Act 69 of the Session Laws of 1898, of the Republic of Hawaii (R. L. 1915, Chap. 54) and to operate the same under and in accordance with the authority of said act. The capital stock of the company was designated to be $200,000 with the right to increase the same from time to time upon notice to the minister of interior (superintendent of public works) by the issue of new shares not to exceed in all $2,000,000, provided that whenever such increase is made for the purpose of constructing new lines or branches of its railway, and of equipping the same, or for covering extensions already made, the notice of the increase shall be accompanied by a sworn certificate of the company showing the estimated or actual cost of such proposed extension or of such extension already

made, and that not more than 25% of such cost has been added. Section 17 of the franchise act (R. L. 1915, Sec. 784) provides as follows:

"The following charges shall be lawful upon the income of said railway:

"1. The expense of operating, repairs, renewals, extensions, interest, and every other cost and charge properly or necessarily connected with the maintenance and operation of said railway;

"2. Dividends may be paid to the stockholders not to exceed eight per cent. on the par value of the stock issued;

"3. A sinking fund may be created for the redemption of any bond which may be issued or other record debt and the capital upon the expiration of the franchise; provided, however, that the amount placed to the credit of such sinking fund annually shall not exceed in amount such a sum, with interest computed at five per cent. per annum, compounded, as will, principal and interest combined, at maturity, equal the par value of the bonds, record and capital debt aforesaid;

"4. The excess of income shall be divided equally between the Territory of Hawaii and the stockholders of said corporation;

"5. A quarterly account or trial balance of the corporation shall be rendered by the corporation to the superintendent of public works from the beginning of the actual construction of the railway."

It is now contended by the complainant that notwithstanding its admission at the hearing that the actual cost of the property of the company was $1,603,056.68, that was not the actual cost to the company, and that the actual cost mentioned in section 37 of the franchise act (R. L. 1915, Sec. 804), which will be dealt with presently, means actual cost to the company. It is argued that the "extensions," for the expense of which the income of the railway may be used under paragraph 1 of section 17, under the rule of construction *noscitur a sociis,* must be held to be limited to such extensions of the lines of the railway as are

proper or necessary to the maintenance and operation of the railway, whereas it has not been shown as to certain of the extensions made by the company that they were so proper and necessary. Assuming the fact to be as contended, we cannot sustain the argument. The language of the paragraph referred to is "every other cost and charge properly or necessarily *connected with* the maintenance and operation of said railway," and the contention made does not go as far as to assert that the extensions in question are not properly or necessarily connected with the maintenance and operation of the road. The view taken by counsel is that the general words of the paragraph qualify the preceding specific words. An equally tenable view would be that the scope of the general words is enlarged by the specific words. See *People* v. *Bridges,* 142 Ill. 30, 37. In the case of *Moir* v. *Knell,* 17 Haw. 135, 139, this court quoted Broom's Legal Maxims, 591 (*455) as follows: "In the construction of statutes, likewise, the rule *noscitur a sociis* is very frequently applied, the meaning of a word, and, consequently, the intention of the legislature, being ascertained by reference to the context, and by considering whether the word in question and the surrounding words are, in fact, *ejusdem generis,* and referable to the same subject-matter." Under the *ejusdem generis* rule the specific words qualify the general phrase. *Territory* v. *Hamakua Mill Co., ante* p. 1. But the words "operating, repairs, renewals, extensions, interest," are not in fact *ejusdem generis*—are not of one genus, and it is held that where the specific words used in the statute are not related neither derives color from association with the others, but each stands as the representative of a distinct class, and neither the *ejusdem generis* rule nor that of *noscitur a sociis* applies. *State* v. *Eckhardt,* 232 Mo. 49, 53; *McReynolds* v. *People,* 230 Ill. 623, 633; *Sheely* v. *People,* 54 Colo. 136. We hold that the company acted within its rights under the stat-

ute in using its income in the making of the extensions in and to its line of road.

The remaining points urged on behalf of the complainant, and which we will discuss, involve the meaning and effect of section 37 (R. L. 1915, Sec. 804) of the franchise act. It reads as follows:

"It shall not be lawful to increase the capital stock of said corporation at any time in excess of said two hundred thousand dollars, unless the proposed increase shall, when taken with the said original capital stock, represent only the actual cost of the property of the railway, and not over twenty-five per cent. of such cost in addition thereto; such cost may include all expense, of laying tracks and equipping the road for public use, and may also include all subsequent extensions, but no such increase shall be authorized for extensions until they shall be determined upon and authorized by a vote of the corporation."

The attorney general, in his brief, says, "Under no rule of statutory construction can this provision be construed as meaning that the company may issue stock that has not been paid for. We contend that this limitation does not give the company the right to issue stock to its shareholders without consideration." The phraseology of the section in question that the capital stock of the company shall not be increased "unless the proposed increase shall, when taken with the said original capital stock, represent only the actual cost of the property of the railway, and not over twenty-five per cent. of such cost in addition thereto" implies that such 25% additional shall not represent value. It was evidently intended to allow a bonus which, taken in connection with the provisions of section 17, would amount to an allowance of ten per cent. of dividends upon stock which has been issued upon capital cost before the government would be entitled to share in an excess of profits. The reason for this provision and the liberal provisions of section 17 is to be found in the conditions which existed when the

franchise .act was passed and the circumstances under which it was enacted. The intention of the legislature is to be ascertained from the words used in the statute "interpreting such words according to their ordinary meaning as well as in the light of all the circumstances that may fairly be regarded as having been within the knowledge of the legislative branch of the government at the time it acted on the subject." *Dewey* v. *United States,* 178 U. S. 510, 520. "The court may with propriety, where the language of the statute appears to be ambiguous or the meaning doubtful, put itself so far as possible in the light that the lawmakers enjoyed, and view the situation as it appeared to them, and thereby ascertain and discover the purpose and intendment of the enactment from the language employed, in connection with the attending conditions and circumstances, including the history of the times." *Northern Com. Co.* v. *United States,* 217 Fed. 33, 35. At the time of the passage of this franchise act the principal streets of Honolulu were occupied by a street railway operated by a foreign corporation, the Hawaiian Tramways Company, under a franchise granted by chapter 34 of the Session Laws of 1884, as subsequently reenacted and amended. The service given by that company was notoriously inefficient and inadequate and unsatisfactory to the public. The rates of fare charged by it were high. There was a demand for a better and cheaper service but the company failed to respond to public opinion. Its cars were drawn by horses and mules, and ran upon an undependable schedule. The company claimed that it had an exclusive franchise, and whether or not it possessed such in law it did have such in fact as to such streets as were not wide enough to accommodate two lines of railway. The legislature must have foreseen that an opposition company, if organized, would soon face expensive and protracted litigation, and that such a company, in order to instal a feasible and adequate

system, would be compelled sooner or later to buy out the existing concern, perhaps at its own terms. Whether an electric road limited to a reasonable rate of fare could be profitably operated was one important question, and another, depending on that, was whether capital could be induced to venture into the enterprise. Here, then, in brief, are some of the circumstances under which the legislature enacted this act, and which go to explain why the seemingly very favorable terms were granted. It was doubtless the purpose of the legislature to, if possible, rid Honolulu of an unsatisfactory and undesirable railway system and open the way for an efficient modern car service. We hold that the theory upon which the bill of complaint in this case evidently was drawn was the correct one, and that the company was entitled, upon increasing its capital stock, to issue to its shareholders, in addition to shares of a par value equal to the amount of the actual cost of its property, shares not exceeding the face value of 25% of such cost, by way of a bonus to encourage the investment of capital in the venture. There is no question here as to the rights of creditors.

Next, it is contended that the words "actual cost" used in section 37 of the franchise act mean actual cost to the company or its stockholders, and should be held not to include cost of property paid for out of moneys borrowed upon bond issues or the investment upon capital account of any surplus income in excess of eight per cent. in any one year which might have been payable to the Territory under the provisions of section 17. And it is argued that even though it should be held that all the net income of the company may be put into extensions, still so much of such income as would otherwise have been payable to the Territory if not so invested ought not to be allowed to be capitalized since to that extent the expense of extensions cannot be said to have been at the cost of the company or its

stockholders.  On behalf of the company it is urged that. the statute authorizes a capitalization based upon the actual cost of the company's property wholly irrespective of the source from whence the money to defray the expense may have been derived.  The complainant invokes the well established rule that grants of public franchises are always construed strictly in favor of the public and against the grantee.  10 Cyc. 1088.  The company invokes the rule as to contemporaneous practical construction, saying, in its brief, "The uniform construction of every department of the government charged with passing upon the matter has been that stock can be issued for the actual cost of the road; that is to say, all expenditures, from whatever source derived, plus twenty-five per cent."  The evidence sustains this contention so far as the executive branch of the government is concerned.  It was clearly the duty of the executive officers to have objected to, protested against and refused to acquiesce in the acts done by the company if they had deemed them illegal.  We cannot presume that they were derelict in duty in the premises.  But we are unable to find that there has been a legislative construction of the disputed questions.  The evidence shows that statements have regularly been rendered by the company to the superintendent of public works as required by paragraph 5 of section 17 of the act; that the required notices have been duly given to the treasurer of the Territory when the capital stock has been increased; that no protest or objection has been made by either officer to the course pursued by the company or its assumption that it had the legal right to pursue the course taken; that from time to time the affairs of the company have been examined into and scrutinized by legislative committees; that both the executive and legislative branches of the government have kept posted from the start as to the manner in which the company's business has been conducted and as to the

method pursued by it in regard to the issuance of stock. And though the manner in which the company handled the transaction whereby it bought out the Hawaiian Tramways Company was criticized, the right of the company to capitalize the cost of other property paid for with money obtained by the sale of bonds, or its right to capitalize income expended on extensions, or its right to issue stock up to 25% above the cost of property under section 37, seems not to have been questioned. Upon the theory that the Territory was not likely ever to share in the surplus income of the company under paragraph 4 of section 17 of the franchise act a statute was passed at the session of 1905 (S. L. 1905, Act 88; R. L. 1915, Section 1241) with a view evidently to obtain more from the company in the way of taxes upon its property. See *Rapid Transit Co.* v. *Assessor,* 18 Haw. 15. Stress is laid by counsel for the company upon the fact that the legislature at its 1913 session passed an act (S. L. 1913, Act 136) amendatory of the act of 1898 which authorized the company to increase its capital stock as of January 1, 1913, to $1,600,000, and at the same time recognized the outstanding bond issue of $599,000. That act, by its terms, required the approval of the Congress of the United States within two years, but the approval was not given. That act, as we understand it, represented a compromise between the views of the territorial executive and those of the company as to the terms upon which an extension of the term of the company's franchise could properly be granted, and the fixing of the amount of the capital stock at the sum of $1,600,000 was a result of such compromise. Some significance may properly be attached, however, to the fact that the word "extensions" was proposed to be eliminated from paragraph 1 of section 17 of the existing act, and the matter of extensions made the subject of a separate paragraph. It is also interesting to note, in connection with the present dispute in regard to the company's

capitalization, the phraseology proposed by way of amendment to section 37, as follows: "No stock in excess of said amount shall be issued by said corporation in consequence of or to represent any increase in the value of its property or any earnings, donations, *proceeds of bonds* or other income expended or *invested in extensions* or improvements of or additions to its property or upon any consideration *except the direct payment of at least par value thereof to said corporation in cash* and with the approval of the commission" etc. But all this falls short, we think, of an actual construction by the legislature of the original franchise act in accordance with the claims of the company. The practical construction accorded by the executive officers having authority with respect to the company's affairs is entitled to weight. 36 Cyc. 1140; *Macfarlane* v. *Collector,* 11 Haw. 166. "The regulation of a department of the government is not of course to control the construction of an act of Congress when its meaning is plain. But when there has been a long acquiescence in a regulation, and by it rights of parties for many years have been determined and adjusted, it is not to be disregarded without the most cogent and persuasive reasons." *Robertson* v. *Downing,* 127 U. S. 607, 613. See also *Fairbank* v. *United States,* 181 U. S. 283, 308. In the case of *Copper Queen Mining Co.* v. *Arizona Board,* 206 U. S. 474, 479, the court said that "when for a considerable time a statute notoriously has received a construction in practise from those whose duty it is to carry it out, and afterwards is reenacted in the same words, it may be presumed that the construction is satisfactory to the legislature, unless plainly erroneous, since otherwise naturally the words would have been changed. * * * Even apart from the reenactment a certain weight attaches to this fact."

The doubt as to the meaning of the provisions of section 37 of the franchise act arises primarily out of the fact that under section 17 the Territory is entitled to share in the

excess income over 8%, and counsel for the appellant point out with much force that if the contentions of the company should be upheld there would be no probability of the Territory ever obtaining any such revenue. The reply of the company is to the effect that the legislature never expected that the government would ever receive any direct revenue out of the enterprise, and that the only object in incorporating the provision of paragraph 4 of section 17 was to encourage the extension of the system and insure, if possible, the maintenance of a good service. The question turns largely upon the meaning of the term "actual cost" as used in section 37. Webster's Dictionary defines the word "cost" as "The amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or service rendered." See *McCoy* v. *Hastings,* 92 Ia. 585. " 'Cost' may be considered as synonymous with 'expense.' " *Hygienic Chemical Co.* v. *Provident Chemical Co.,* 176 Fed. 525, 528. Under this definition borrowed money expended on property would be included in computing the cost of the property. "Actual cost" means money actually paid out. *Lexington etc. R. Co.* v. *Fitchburg R. Co.,* 9 Gray 226, 230. Or "real cost." *Newton, Petitioner,* 172 Mass. 5, 10. And excludes all profit. *Raisler Heating Co.* v. *Dowd,* 102 N. Y. S. 504. In the case of *In re Old Colony Railroad,* 185 Mass. 160, a statute relating to the abolition of certain grade crossings provided that the State should "repay to said railroad company forty-five per cent. of the cost incurred by said company in carrying out said alterations and improvements." The company claimed the right to include interest on borrowed money. That claim was not allowed, but the court assumed that the amount of borrowed money could properly be included, saying (p. 163), "The cost incurred by the company, and for which it is to be finally repaid, are the necessary disbursements required to make the alterations or-

dered by the commissioners; and to meet this expense, it may pay from funds in its treasury, or issue and sell its stock, or it might go into the market, and hire what was necessary on its negotiable paper." In *State ex rel. Bridge Co.* v. *Mayor,* 49 Mo. 401, under ordinances authorizing and requiring the city of St. Joseph to issue city bonds to and to subscribe for a certain amount of stock in a bridge company when and as certain sums had been actually expended by the bridge company in the construction of a bridge across the Missouri river, the mayor refused to issue the last instalment of bonds called for on the ground that it did not appear that the sum expended by the company was derived from other sources than the sale of city bonds as contemplated in the first ordinance. The court, after calling attention to the contemporaneous construction placed upon the ordinance by the parties themselves held that "when the plaintiff made its proof as required, that it had expended the necessary sum, although it did not appear that it was derived from a source other than the sale of the city bonds, then the mayor should have delivered the additional bonds demanded."

The claims advanced by the company which go to the extent of almost nullifying paragraph 4 of section 17 of the act as a possible source of revenue to the Territory might be difficult to sustain as against the rule of strict construction against the grantee of a franchise were it not for the contemporaneous construction given to the act by the executive officers. Taking the provisions of the statute as we find them and applying the two rules of construction referred to, balancing one against the other, we think, upon the whole, that the contention of the appellant that the term "actual cost" used in section 37 means cost to the company should be sustained so far as the investment of income is concerned, but not as to borrowed money. Under the view we take of the matter the company was entitled

to expend as much of its income as it desired for the purposes enumerated in paragraph 1 of section 17, but that it could not all be capitalized as cost under section 37. We hold that the actual cost of the company's property does not include any money expended upon property which money would otherwise have been payable to the Territory as its share of excess profits over 8% in any one year under section 17. As such money could never have reached the stockholders of the company it cannot be said that it was expended at their cost. And if the contemporaneous construction can be said to have extended to a contrary view on this point it was so clearly wrong that it ought not to be followed. On the other hand, we hold that borrowed money invested in property may properly be included in computing the actual cost of the property to the company and, therefore, may be capitalized under section 37. Whether the bonds will eventually be redeemed with money that would otherwise have gone to the stockholders as income within the rate of 8% a year, or with such as would have been divided equally between the Territory and the stockholders as net income in excess of 8%, were it not for the provision for a sinking fund, is a thing that cannot be determined until the bonds shall be taken up. In this connection it should be noted that the right to provide a sinking fund for the redemption of bonds has precedence under section 17 of the act to the right of the Territory to share in the excess income.

On behalf of the appellant it is contended that under general corporation law shares of stock may not be issued except upon payment of the par value thereof, or, when issued by way of a stock dividend to shareholders, only in case property equivalent in value to the full par value thereof has been accumulated and added to the capital assets of the corporation; also that under the law applicable to public utility companies as established in "rate" cases the

stockholders are entitled to only a reasonable return on their investment. And it is urged that under either or both of these principles this company is not entitled to increase its capital stock because the actual value of its existing property does not warrant it, and because the stockholders may now receive full and reasonable returns on the capital invested. The writer is of the opinion that assuming the contentions to be correct in point of law, the conclusion cannot be adopted, even though the facts may be as stated. It seems clear that the contentions have no application in the case at bar. Here, the rights of the company with respect to the issuance of stock are set forth in the franchise act. Whatever may be the rule applicable to corporations under the general law or under public utility statutes, this company's rights in the premises are defined by the special act under which it operates. A corporation being a creature of statute, its powers are determined by the statute under which it was organized. *Head* v. *Providence Ins. Co.,* 2 Cranch 127, 167; *Oregon R. Co.* v. *Oregonian R. Co.,* 130 U. S. 1, 20; *Royal Arcanium* v. *Green,* 237 U. S. 531, 543. A corporation may be authorized by a special statute to do something which other corporations operating under a general statute may have no power to do. In such case the special provision is regarded as an exception to or repeal of the general law as to the particular corporation. 4 Thompson on Corp. Sec. 5678; *Jones* v. *Railroad,* 67 N. H. 234, 238. The Honolulu Rapid Transit & Land Company was incorporated for the purpose of exercising the franchise granted by Act 69 of the Session Laws of 1898, and possesses all the powers conferred by that act. Section 37 authorized the issuance of capital stock equal to the amount of the actual cost of the property of the company and not over 25% of such cost in addition thereto. The meaning of the term "actual cost" having been ascertained there is no further doubt as to the meaning of the pro-

vision. The intent is plain and there is no room for construction. The question as to the present value of the company's property does not affect the company's right to increase its capital stock.

As to the matter of the cost of the company's property we find that, after leaving out of consideration certain disputed items as to which there may perhaps be some doubt, there should be added to the sum of $1,603,056.68, admitted by the complainant to have been actually and properly expended, the items of $255,549.94, purchase of Hawaiian Tramways Company, and $79,024.43, Pearl Harbor Traction, making a total of $1,937,631.05. And we hold that the actual cost of the property of the company was not less than that sum, except that there should be deducted the amount of excess profits, if any, invested in property which would otherwise have been payable to the Territory under section 17 of the act as hereinabove stated. This conclusion does not change the ultimate result arrived at by the circuit judge in dismissing the bill. The decree appealed from will therefore be affirmed.

There were other and subordinate questions discussed in the briefs and argument which we deem it unnecessary to comment upon.

*I. M. Stainback,* Attorney General, *W. H. Heen,* Deputy Attorney General, and *W. T. Carden,* Second Deputy City and County Attorney, for complainant.

*W. F. Frear* and *D. L. Withington* (*Frear, Prosser, Anderson & Marx* and *Castle & Withington* on the brief) for defendant.

### CONCURRING OPINION OF WATSON, J.

I concur in the conclusion that the decree of the lower court should be affirmed. I also concur in so much of the reasoning contained in the opinion of the chief justice as is

germane to what I conceive to be the sole issue involved, i. e., the right of the company to increase its capital stock to the sum of $1,600,000. I agree that the rule *noscitur a sociis* should not be applied in construing the word "extensions" as used in paragraph 1 of section 17 of the franchise act, and that the company had the right under the statute to use its income in the making of the extensions in and to its line of road; that the proceeds of bonds invested in property may properly be included in computing the actual cost of the property to the company, and may be capitalized under section 37 of the act; and that the company has not the right to capitalize excess income invested in property, which excess income would otherwise have been payable to the Territory under the provisions of paragraph 4 of section 17 of the act. It is made plain by the provisions of section 37 of the act (which section is quoted at length in the principal opinion)—and this was the view taken by the circuit judge—that the right of the company to increase its capital stock is dependent, not upon the present value of the property of the company but upon the actual cost of such property. The circuit judge, without making any specific finding as to the actual cost of the company's property, held generally that upon the showing made such cost was more than sufficient to authorize the company, under the terms of the franchise act and of its charter, to increase its capital stock to $1,600,000, and thereupon a decree was entered dismissing complainant's bill and dissolving the temporary injunction theretofore issued. Holding, as we do, that the cost of the property was not less than $1,937,631.05, and accepting as correct the figures contained in the reply brief of counsel for the appellant showing that on April 30, 1915, the date of the filing of the bill, the amount of excess profits invested, to which the Territory would otherwise have been entitled under section 17 of the franchise act, amounted to $278,131.95, it is obvious that, deducting this last men-

tioned amount from the total cost, the actual cost of the company's property which it may rightfully capitalize amounts to more than $1,600,000; and this without taking into consideration the provisions of section 37 of the franchise act which would seem to authorize the issuance of capital stock to the amount of the actual cost of the property of the company and not over twenty-five per cent. of such cost in addition thereto.

When complainant stipulated in the court below that of the items aggregating $2,171,976.11, submitted by the company as capital expenditures representing the original cost of the property, items to the extent of $1,603,056.68 were correctly stated, I am of the opinion that upon the issue raised by the pleadings the complainant was virtually out of court.

The contention of the attorney general in his brief and oral argument that the company has not the right to issue stock to its shareholders without consideration raises a point which is wholly without the case made by the pleadings and one that was not considered or passed upon by the lower court. The rights of creditors are not involved in this proceeding (*Handley* v. *Stutz,* 139 U. S. 417; *Christenson* v. *Eno,* 106 N. Y. 97, 60 Am. Rep. 429). The sole issue made by the pleadings is as to the right of the company to increase its capital stock, and this was the only question passed on by the circuit judge. At this time to permit complainant to interject into the case an entirely new issue *as to what disposition the company may lawfully make of its shares, even if it has the right to increase its capital stock and issue them,* is, as I view it, wholly inappropriate, not warranted by the pleadings, and should not be permitted. This court should not decide a moot question where it is apparent that the object of the parties is not the vindication of a right, but a desire to obtain an interpretation of a statue. *Sennette* v. *Police Judge,* 129 La. 728, 56 So. 653.

If the company has the right to increase its capital stock, the disposition of the shares after such increase would in no wise affect complainant's right to the injunctive relief sought by the bill. In my opinion the question is not open for consideration in this case. *National Bank* v. *Commonwealth,* 9 Wall. 353; *Harding* v. *Giddings,* 73 Fed. 335, 341; *Stevenson* v. *Henkle,* 100 Va. 591, 42 S. E. 672; *Union Bank* v. *City of Richmond,* 94 Va. 316; 26 S. E. 821. To consider and determine this question would, in my opinion, as was said by the supreme court in *Supervisors* v. *Lackawana Iron and Coal Co.,* 93 U. S. 619, 624, "involve the exercise on our part of original instead of appellate jurisdiction. This is not permitted to us." "The supreme court of this Territory is primarily a court of appeal and has such original jurisdiction only as has been expressly, or by necessary implication, conferred upon it by law." *In re Pringle,* 22 Haw. 589.

In my opinion, under the stipulation entered into by the parties as to the cost of the property of the company, and under all the evidence in the case, the decree of the lower court should be affirmed.

### CONCURRING OPINION OF QUARLES, J.

I concur in the conclusion that the decree denying the injunction sought be affirmed on the ground that the proven facts show that the defendant corporation's property exceeds in cost the amount to which it proposes to increase its capital stock in the aggregate. Many questions entirely without the issues made by the pleadings have been discussed in the briefs and oral arguments and to some extent in the principal opinion. The issues made by the pleadings raise only one question, i. e., whether under the facts the defendant has the power under the franchise act and its articles of incorporation under which it operates, and

under the general incorporation laws of the Territory, to increase its aggregate capital stock to $1,600,000. A written stipulation was filed wherein it appears by agreement of both parties to this suit that the cost of the defendant's properties exceeds the sum named. The injunction sought was demanded upon the sole ground that the proposed issue of stock would increase the capital stock of the defendant to an amount in excess of the cost of its properties in violation of section 37 of the said franchise act, and on this issue the evidence and admitted facts are against the contention of the Territory.

To my mind the provisions of sections 17 and 37 of the franchise act, which sections are quoted in the principal opinion, are plain and free from ambiguity and call for no construction by extrinsic aid or otherwise. The phrase in said section 37 "increase its capital stock" means just what those words import in their usual and ordinary signification and said section does not authorize the defendant to water its stock or to issue stock dividends except in the manner authorized by section 3299 R. L. The words "right" and "power" mean different things. It is only a question of power that is involved here. The right of the defendant to issue some of the stock heretofore issued by it and to issue further stock, and the disposition of such stock as well as the amount of excess income heretofore earned by the defendant, to which the Territory is entitled, are matters to be settled in some other suit or suits and are not involved in the issues now before this court.